## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:08cv273** |
| | § | |
| **HEWLETT-PACKARD COMPANY** | § | **JURY TRIAL** |
| **and DELL, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

### PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

Pursuant to this Court's Local Rule P.R. 4-5(a), Plaintiff Fenner Investments, Ltd. ("Fenner") submits this opening brief. On August 7, 2008, the parties submitted their Joint P.R. 4-3 Statement. Thereafter, the parties conferred in attempting to narrow the issues to be considered at the *Markman* hearing, and hope to make further progress in that effort. Fenner asserts that Defendants Hewlett-Packard Company and Dell, Inc. infringe Claim 3 of U.S. Patent No. 5,842,224, and Claims 9, 10, 19, and 20 of U.S. Patent No. 7,145,906.

On May 26, 2009, this Court entered a Memorandum Opinion and Order ("the *3Com* Order") in *Fenner Investments, Ltd. v. 3Com Corp., et al.*, Civil Action No. 6:08-CV-61, involving the same Fenner patents and construing certain terms that are now in dispute in this case. One additional term ("filtering the data packet") has been put into dispute here that was not construed in the *3Com* Order. Fenner has withdrawn all previously asserted claims that include "means-plus-function" terms, thus further reducing the *Markman* issues. The parties have agreed to six constructions.

1

## I.    AGREED CONSTRUCTIONS

| Claim term | Agreed Construction |
|---|---|
| MAC address ['906: 9, 10, 19, 20] | Physical address used by the media access controller (MAC) level defined by standards such as Ethernet, token ring, or FDDI |
| MAC source address ['906: 9, 10, 19, 20] | MAC address (as construed herein) of origin |
| MAC destination address ['906: 9, 10, 19, 20] | MAC address (as construed herein) to which something is sent |
| Source filtering information ['224: 3] | Information used to determine whether to filter a packet based on the packet's source address |
| Source address filtering information ['906: 9, 19] | Information used to determine whether to filter a packet based on the packet's source address |
| Stored protection record ['906: 10, 20] | Record containing information used to determine whether to filter a packet based on the packet's source address |

The term "MAC address" was a contested term in the *3Com* case. The parties in this case have agreed to the Court's construction of this term in the *3Com* Order. The additional five terms listed above were also agreed to in the *3Com* case, and the identical constructions are provided in the above table. Five contested terms remain in this case.

Since the Court is already familiar with the technology and will hear more about that in tutorials and at the *Markman* hearing, this brief will focus on only the technology that is pertinent to the legal issues to be decided.

## II.    LEGAL AUTHORITIES

The construction of a patent claim is a matter of law exclusively for the Court. *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). The claims, and not the written description part of the specification, delineate the right to exclude. *Id.* at 980. The intrinsic evidence of record is the most significant source of the legally operative meaning of disputed claim language. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Expert testimony that

is inconsistent with the intrinsic record should be accorded no weight. *Id.* at 1584. Courts construe claim terms according to their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The claims themselves provide substantial guidance as to the meaning of particular claim terms. *Id.* at 1314. Claims must be read in view of the specification, of which they are a part. *Markman*, 52 F.3d. at 977. The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Phillips*, 415 F.3d at 1314-15. Claims are not confined to specific embodiments described in the specification. *Id.* at 1323.

### III.    THE INVENTIONS

In the fall of 1988, Peter R. Fenner, working as an individual inventor without the resources of a large corporate R & D department, had a burst of creativity in which he confronted multiple challenges then facing packet-switched network designers. His initial concepts and continuing efforts to perfect and reduce those concepts to practice led to the filing of the first of multiple patent applications on June 16, 1989, from which the patents-in-suit claim priority. The Patent Laws treat the filing of a patent application as a "constructive reduction to practice" in recognition in part of the practical difficulties faced by small-entity inventors of limited means. The outside-the-box thinking of inventors like Peter Fenner has been rewarded by the Patent System since the early days of our country to promote progress in technology from which we all benefit. Multiple patents have been awarded to Mr. Fenner as a result of that initial creative burst, including the two patents-in-suit in this case. Defendants, who have indicated their intent

to place heavy reliance on extrinsic evidence, undoubtedly will attempt to diminish Mr. Fenner's accomplishments as they urge this Court to improperly limit the scope of the asserted claims to detailed examples in the patent specification.  Legal precedent is squarely on Fenner's side on this issue, as it is well settled that claims are not limited to the preferred embodiments.  Were it otherwise, there would be no need for claims.

## IV.    THE '224 PATENT

### A.    Putting Claim 3 of the '224 Patent into Context

The invention of Claim 3 of the '224 patent is directed to the problem of restricting packet routing from a particular sender to a particular recipient, with the complicating factor that the sender and recipient are in different networks.  Figure 2 of the patent shows in block diagram form the preferred circuitry for performing the claimed method "using parallel processing."  Col. 7: 6-9.  Figure 3 shows "an alternate circuit using serial processing."  Col. 7: 10-13.  The circuits of Figures 2 and 3 each have a source protect record (80 or 110) and a destination route record (86 or 112).  And each such circuit uses the protect and route records as inputs to a buffered routing logic to select the outbound path for the message.  Col. 15: 40-42.  The buffered routing logic not only performs a "routing" function as its name indicates, it also performs a protection or "filtering" function "to determine if any or all of the other connected nodes are protected from receiving the information from the incoming source."  Col. 13: 1-5.  Figure 4 is a block diagram of a circuit that could be used for processing destination and source addresses in an arriving data packet.  Col. 7: 14-22.  These circuits enable the routing method of Claim 3 to selectively protect an identified destination device or recipient from receiving data packets from an identified sender.

The "node" referred to in Claim 3 corresponds to the "MAC switch 38" of Figure 2, in which "MAC" is an acronym for "Media Access Controller." The task of "determining if any or all of the other connected nodes are protected from receiving the information from the incoming source" is accomplished by "source address filtering." Col. 13: 1-6. "Thus in FIG. 2, MAC 34 may transmit data and clock information on lines 36 to switch 38 which determines which of the destination MACs 40, 42, 44 and 46 are to receive the information." Col. 13: 7-10. "The outputs of the protect record 80 and route record 86 are used by the routing logic 56 in a well-known manner to determine which destination MAC is to receive the message." Col. 13: 62-65. "The source protect record 80 may be modified by management decision to prevent messages from a particular source identification code from being forwarded on particular paths to other nodes." Col. 14: 32-35.

The above-referenced excerpts from the specification are useful in understanding how the invention of Claim 3 restricts packet routing from a particular sender to a particular destination device or recipient by "filtering the data packet in response to the source filtering information." Claim 3, Col. 35: 5-6. The source protect record 80 of Figure 2 corresponds to the "source filtering information" recited in Claim 3. Stated simply, this stored information is a record of source-protected destinations. The data packet's destination address is processed by the MAC 38 to create the route record 86. The buffered routing logic 56 performs the claimed method step of "filtering" by a logical operation (for example, using conventional logic gates like "AND-gates") to determine which destinations are protected from receiving the data packet. If the route record 86 identifies an unprotected destination, the buffered routing logic 56 will send the

data packet out on a line 58, 60, 62 or 64 to that destination. The packet will not be permitted to exit through a line to a protected destination. Thus, the invention of Claim 3 enables selective filtering by matching any particular source with particular destinations so that incoming data packets will be routed out only to unprotected destinations.

### B.     The Contested Terms in Claim 3 of the '224 Patent

### 1.     filtering the data packet

This term was not a contested term in the *3Com* case. However, "filtering the data packet" was inferentially construed in the *3Com* Order in connection with this Court's finding that the corresponding structure of the "means for filtering" term of Claim 8 was the buffered routing logic and equivalents thereof. As a premise leading to that finding, the Court stated:

> The parties agree that the function of this [means] term is "filtering the data packet in response to the source filtering information." As explained above, protect record 80 is processed by buffered routing logic 56 *to determine which of MACs 40, 42, 44, 46 are protected from receiving the packet*. '224 patent at 13:62-65. Plaintiff points out that buffered routing logic 56 performs the source filtering, and that protect record 80 is source filtering information.

*3Com* Order at 30 (clarifying insert and italics added).

Accordingly, Fenner adopts as its proposed construction for "filtering the data packet" the essence of the Court's inferential construction of this term.

| Claim term | Fenner's proposed construction | Defendants' proposed construction |
|---|---|---|
| Filtering the data packet | Determining which connected nodes are protected from receiving the data packet | Determining whether or not to forward the data packet out one or more ports of the node |

The claimed filtering step performs a protection function. Fenner's proposed construction captures that essential concept. Defendants' proposed construction erroneously sidesteps the distinction between filtering and routing.

Referring to Figure 2, the buffered routing logic 56, which can be implemented using basic logic circuitry, combines the functions of filtering and routing using the outputs of the source protect record 80 and the route record 86. Col. 13: 62-65. The same final-step logical operation is performed by the alternative embodiments of Figures 2 and 3. "The source protect record 110 and the destination route record 112 feed into the buffered routing logic 56 of FIG. 2 to select the outbound path (MAC) for the message." Col. 15: 40-42.

From the above-quoted excerpt in the Court's *3Com* Order, it is clear that the Court understood the distinction between filtering and routing, which Defendants now want to obfuscate. Defendants' proposed construction ("determining whether or not to forward the data packet out one or more ports of the node") is an attempt to construe the phantom term "routing the data packet" rather than the actual claim term "filtering the data packet."

A practical example is helpful to appreciate this distinction. Suppose that the protect record 80 has identified lines 62 and 64 to nodes 44 and 46 as protected, and suppose that the route record 86 has identified line 60 as the correct path to the destination. The buffered routing logic 56 would then be able to perform the "filtering" step of Claim 3 "in response to the source filtering information" by logically preventing data outputs on lines 62 and 64. But the "source filtering information" output from the protect record 80 would not enable the buffered routing logic 56 to choose between

unprotected lines 58 and 60. That choice requires the output from the route record 86. The specification makes this distinction clear. "The outputs of the protect record 80 and route record 86 are used by the routing logic 56 in a well-known manner to determine which destination MAC is to receive the message." Col. 13: 62-65. Thus, the buffered routing logic 56 logically combines a filtering output and a routing output to select an unprotected path to the destination, if one exists. The filtering function is performed in response to the source filtering information. Thus, "filtering the data packet" is correctly construed to mean "determining which connected nodes are protected from receiving the data packet."

    2.    **logical address**

This was a contested term in the *3Com* case and the Court arrived at a compromise construction that the Court qualified with a proviso in its *3Com* Order. Fenner adopts that construction as its proposed construction, as shown in the table below. Defendants seek to rehash the "no internal structure" language that was argued by the *3Com* Defendants and rejected by the Court.

| Claim term | Fenner's proposed construction | Defendants' proposed construction |
|---|---|---|
| Logical address | A fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet delivery; provided that this construction does not imply that a logical address is fixed, unique, and unchanging for all time. | A fixed, unique, and unchanging identifier assigned within a communications system comprising a plurality of data networks, the identifier having no internal structure to suggest network connection location. |

Basically, a logical address is a network address for a "user name" generated by a network name service. Col. 5: 50-52. In contrast, a physical address is "associated with

interface hardware." Col. 10: 54-55. Thus, logical addresses and physical addresses differ in how they are created and how they are used in networks. Network transmission of data packets is governed by protocols or standards so that network participants know how to communicate with each other from remote locations. Different communication standards have long existed for processing packets at the "physical layer" and at the "network layer." Col. 13: 28-35. The '224 patent uses the terms "layer" and "level" interchangeably, and identifies the "physical layer" with the "MAC level." *Id*. The switch 38 of Figure 2 is a versatile routing machine that can function both as a "MAC level switch" and as an "internet level switch." Col. 13: 1 and 66.

The switch 38 of Figure 2 is capable of operating as a node in the mobile communication system of Figure 1, preferably routing data packets using physical layer addresses. Col. 11: 40-43 and 48-54. Alternatively, the versatility of the design of switch 38 enables it to operate at the internet level in such a mobile communication system, in which it performs routing using logical addresses. Col. 13: 66 – Col. 14: 19. Thus, Peter Fenner designed his switch 38 of Figure 2 to facilitate operation in a complex communication system, like that generally represented in Figure 1, in which communications can be readily maintained between mobile hosts (e.g., aircraft 10 and ship 12) while they move within the system by assigning to them "fixed unique identification codes" that are not location dependent. Col. 6: 20-36; Col. 8: 34-47.

The Court in the *3Com* case considered the construction of the term "logical address" in the context of mobile systems and the problems that the inventor addressed and solved in that context. *3Com* Order at 2. In particular, the inventor addressed the problem of having to change the address code of a host when it moves to a different

location, and the further problem of then trying to route a message to that host after its address has changed. Col. 2: 22-36. The system disclosed in the '224 patent overcame those problems by "assigning a fixed, unique and unchanging identification code" to all communicating hosts. Col. 2: 37-46.

That problem-solution context led to the *3Com* Court's construction of "logical address" as "a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet delivery." *3Com* Order at 11-12. The Court qualified its construction by recognizing that a logical address is "assigned within a network to represent a connection to the network," and therefore "if a device is disconnected from the network, and later re-connected, it may be assigned a different logical address that is fixed, unique, and unchanging, for the duration of the connection." *Id*. at 11. Accordingly, the Court added the proviso that "this construction does not imply that a logical address is fixed, unique, and unchanging for all time." Fenner agrees with the Court's reasoning and has adopted the construction in the *3Com* Order, specifically adding the proviso as stated in the table above for Fenner's proposed construction of the claim term "logical address."

Defendants' proposed construction is flawed in that it incorrectly characterizes a "logical address" as "having no internal structure to suggest network connection location." Essentially the same language was proposed by the *3Com* Defendants and rejected by this Court. The Court correctly relied on the parties' agreement at the *Markman* hearing that "although a logical address may have some sort of structure, it is processed by the claimed invention without regard for that structure." *3Com* Order at 9. This comports with the intrinsic evidence that describes the disclosed communication

10

system as using "a routing table access method that *treats* network addresses as variable length strings *without internal structure* ...." Col. 21: 20-25 (emphasis added). Thus, a logical address clearly has an internal structure, but is merely treated in the preferred embodiments without regard for that structure.

### 3. Looking up, in a directory table stored at the node, source filtering information associated with the first logical address

Defendants propose a contrived construction for this term that seeks to limit Claim 3 to a preferred embodiment. It is well-settled that this is improper. *Phillips*, 415 F.3d at 1323.

| Claim term | Fenner's proposed construction | Defendants' proposed construction |
|---|---|---|
| Looking up, in a directory table stored at the node, source filtering information associated with the first logical address | Plain meaning (incorporating the constructions of constituent terms). | Retrieving source filtering information (as construed herein) contained in a record identified by a unique value created by arithmetically compressing, as distinct from hashing, the first logical address |

Apparently, Defendants intend to use the word "associated" as a hook to drag detailed features (like arithmetic compression) from the specification into Claim 3. But the intrinsic evidence shows that the word "associated" was used in the patent according to its plain and ordinary meaning. For example, the specification uses "associated" consistent with its ordinary meaning in the sentence, "Physical addresses are associated with interface hardware." Col. 10: 54-55. Other examples of plain meaning usage can be found at Col. 3: 26-30 and Col. 14: 15-19. Apart from the constituent terms "source filtering information" and "logical address" that require their own constructions, Fenner

contends that the "looking up" step in the above table should be construed according to its plain meaning. *Phillips*, 415 F.3d at 1312-13.

Moreover, other claims in the '224 patent call for "arithmetically coding" of addresses. In particular, independent Claim 1 and dependent Claim 6 both call for this step, which is preferably accomplished using "reversible arithmetic code compression" and "dynamic hashing." Col. 21: 41-44. Accordingly, Defendants' proposed construction conflicts with the principle of claim differentiation. *Phillips*, 415 F.3d at 1314-15.

V.     **THE '906 PATENT**

A.     **The Claimed Inventions**

Claims 9, 10, 19, and 20 of the '906 patent are asserted in this case. Each of these claims is directed to general operational aspects of the preferred MAC level switch 38 shown in Figure 2. The asserted claims refer to the MAC level switch 38 generically as a "packet switching node" that has MAC communications ports, each of which has a MAC address. The asserted claims describe functions that can be performed by the switch 38 when operating at the IEEE standard physical layer or MAC level. '906 Col. 14: 15-18; '224 Col. 13: 28-31. (For convenience, citations are provided to the same text in both patents-in-suit).

The MAC switch 38 maintains source and destination address information in tables, which are used to make source-protected routing decisions. '906 Col. 14: 43-52; '224 Col. 13: 56-65. More specifically, the switch 38 makes filtering decisions and routing decisions using the routing logic 56 operating on records 80 and 86 derived from the tables 78 and 84. *Id.* Claims 9 and 19 specifically use the term "filtering." Claims

12

10 and 20 refer to a "stored protection record," which has an agreed construction that encompasses filtering.

**B.    The Contested Terms in the Claims of the '906 Patent**

**1.    stored association**

| Claim term | Fenner's proposed construction | Defendants' proposed construction |
|---|---|---|
| Stored association | Plain meaning; no construction necessary | An index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node |

Fenner will address the term "stored association" together with the term or clause below in which it appears.

**2.    stored association between the first MAC address and one of the at least three communication ports**

| Claim term | Fenner's proposed construction | Defendants' proposed construction |
|---|---|---|
| Stored association between the first MAC address and one of the at least three communication ports | Plain meaning; no construction necessary | Creating a stored association between the first MAC address and the communications port at which the packet was received |

Defendants include the "stored association" term in their construction of the longer clause in which it appears, apparently conceding that "stored association" is used according to its plain meaning.  But on the assumption that Defendants' intention was to incorporate their construction of "stored association" into the longer clause, then the entire construction for that clause would read, "creating an index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node between the first MAC address and the communications port at which the packet was received."   An important purpose of a

13

court's claim construction rulings is to insure that the jury fully understands what the patentee covered by the claims. *Sulzer Textile A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).    Defendants' proposed construction would not aid the jury's understanding.

What appears to be Defendants' true contention with respect to these two terms is that the word "association" somehow limits the claims to the specific technique of "arithmetically compressing" addresses, which is disclosed in the Fenner patent specification but is not recited in the asserted claims.    As argued above in connection with the use of the word "associated" in the "looking up" step in Claim 3 of the '224 patent, the plain meaning should also apply to the word "association."    Fenner contends that "associated" and "association" are common English language words that the jurors will have no difficulty understanding.    Moreover, the intrinsic evidence shows that these words were used in the Fenner patents according to their plain meaning.    Fenner incorporates by reference here the arguments made above to that effect in its discussion of the "looking up" clause used in Claim 3 of the '224 patent.

The Defendants in the *3Com* case asked the Court to construe the term "stored association with one of the three [sic] least communications ports."    The *3Com* Defendants proposed a construction that included the language "created by arithmetically compressing," which appears to be at the heart of Defendants' contentions here. However, the Court disagreed with the *3Com* Defendants and held "No construction necessary" for this term.    *3Com* Order at 41.    The Court devoted over five pages of its *3Com* Order in a thorough and well-reasoned analysis, which Fenner contends does not require the Court's reconsideration.    *3Com* Order at 15-21.

## VI.    CONCLUSION

Fenner's proposed claim constructions are entirely consistent with this Court's determinations in its *3Com* Order.  The Defendants in that case were ably represented and the issues were thoroughly considered by the Court in arriving at its claim constructions. The Defendants in this case are entitled to be heard, but are offering proposed constructions for the presently contested terms that this Court already has expressly or implicitly rejected.  Once again, the Court will hear arguments based on flawed analysis that deviates from well-settled claim construction principles, including the plain meaning rule, the prohibition against limiting the claims to the preferred embodiments, the claim differentiation rule, and improper reliance on extrinsic evidence that contradicts the intrinsic record.  Accordingly, Fenner respectfully requests that the Court adopt its proposed constructions as set forth herein.

DATED:  August 27, 2009                   Respectfully Submitted,

                                          **LOEWINSOHN FLEGLE DEARY, L.L.P.**

                                          /s/ David R. Deary
                                          David R. Deary, TBN #05624900 (Lead Attorney)
                                          Jim L. Flegle, TBN #07118600
                                          Peter J. Thoma, TBN #19841200
                                          Corey Weinstein, TBN #24037685
                                          12377 Merit Drive, Suite 900
                                          Dallas, Texas 75251-2224
                                          (214) 572-1700 Telephone
                                          (214) 572-1717 Telecopy
                                          Davidd@lfdlaw.com
                                          JimF@lfdlaw.com
                                          Petert@lfdlaw.com
                                          CoreyW@lfdlaw.com

                                          **ATTORNEYS FOR PLAINTIFF,
                                          FENNER INVESTMENTS, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically on the 27th day of August, 2009, in compliance with the Court's Standing Order Designating Case for Enrollment in the Electronic Case Files "ECF" System and has been served on all counsel who have consented to electronic service and all other counsel by regular mail.

                                          /s/ David R. Deary
                                          David R. Deary