IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| FENNER INVESTMENTS, LTD. | § | |
| --- | --- | --- |
| | § | |
| v. | § | CIVIL ACTION NO. 6:08-CV-273 |
| | § | |
| HEWLETT-PACKARD CO., et al. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent Nos. 5,842,224 ("the '224 patent") and 7,145,906 ("the '906 patent"). Plaintiff Fenner Investments, Ltd. ("Plaintiff") accuses Defendants Hewlett-Packard Company and Dell, Inc. ("Defendants") of infringing claim 3 of the '224 patent and claims 9, 10, 19, and 20 of the '906 patent. The parties submitted two disputed claim terms for construction (Doc. Nos. 69, 71, 73). A *Markman* hearing was held on October 8, 2009. For the reasons stated, the Court adopts the constructions set forth below.

## RELATED CASES

Plaintiff asserted the '224 and '906 patents in a co-pending case before the Court. *See Fenner Investments, Ltd. v. 3Com Corp.* (Case No. 6:08-cv-061). The Court held a *Markman* hearing in that case on April 23, 2009, and issued a claim construction opinion on May 26, 2009 ("the '061 opinion") (Case No. 6:08-cv-061, Doc. No. 265). In a case formerly before the Court, Plaintiff asserted U.S. Patent No. 6,819,670 ("the '670 patent"). *See Fenner Investments, Ltd. v. Juniper Networks, Inc.* (Case No. 2:05-cv-005). The '670 patent is a parent patent of the '906 patent. The Court construed certain terms of the '670 patent in an order dated May 16, 2006 (Case No. 2:05-cv-005, Doc. No. 389).

## OVERVIEW OF THE PATENTS

Plaintiff owns a family of patents related to network communications. The patents at issue in this case are children of U.S. Patent No. 5,095,480. The '224 and '906 patents relate to the routing of packets in a communication system. Plaintiff asserts claim 3 of the '224 patent and claims 9, 10, 19, and 20 of the '906 patent. The asserted claim of the '224 patent recites a method for filtering packets based on the logical address of the packet sender. The asserted claims of the '906 patent concern apparatuses and methods for filtering and forwarding packets based on media access controller (MAC) addresses and creating routing table directories.

The disputed term in the '224 patent appears in claim 3:

> In a communications system comprised of a plurality of data networks interconnected for communicating packets of data, a routing method comprising:
> receiving a data packet at a node connecting at least a first one of the plurality of data networks to a second one of the plurality of data networks, the data packet including a physical address for identifying a device to which the data packet is to be routed and a first **logical address** for identifying a sender of the data packet independent of the sender's physical address;
> examining the data packet for the first **logical addresses**;
> looking up, in a directory table stored at the node, source filtering information associated with the first **logical address**; and
> filtering the data packet in response to the source filtering information.

The disputed term in the '906 patent appears in each of the asserted claims. Claim 9 is representative of its use:

> A packet switching node comprising:
> at least three IEEE 802 media access controller (MAC) communications ports, each communications port having associated with it a MAC address;
> circuit for,
> if a first MAC address contained in a MAC source address field of a packet received on one of the at least three communications ports has a **stored association** with one of the three least communications ports at which it was received, and if source address filtering information is associated with the first MAC address contained in the received packet, filtering the received packet according to the source filtering information;
> if the node has no **stored association** between the first MAC address

> and one of at least three communications ports at which it was received, associating the first MAC address with one of the at least three communications ports at which the packet was received and, if source address filtering information is associated with the first MAC address, filtering the received packet according to the source filtering information;
>    . . . .

## **LEGAL STANDARD**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman*

*v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The doctrine of prosecution disclaimer is well established and prevents a patentee from recapturing through claim interpretation specific meanings disclaimed during the prosecution of the patent. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1223 (Fed.Cir.2003). The prosecution history must show that the patentee "clearly and unambiguously" disclaimed or disavowed the proposed interpretation during the patent's prosecution to obtain claim allowance. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed.Cir.2002). "Indeed, by distinguishing the claimed

4

invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.,* 164 F.3d 1372, 1378-79 (Fed.Cir.1998). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.,* 334 F.3d at 1324.

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

**I. Logical Address**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Logical Address | a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet delivery; provided that this construction does not imply that a logical address is fixed, unique, and unchanging for all time.<br><br>*In the alternative:* | a fixed, unique, and unchanging identifier assigned within a communications system comprising a plurality of data networks.<br><br>*In the alternative:*<br>a fixed, unique, and unchanging identifier assigned within a communication system comprising a plurality of data networks, whereby the |

| | a fixed code assigned within a network to uniquely identify a host independent of its hardware connection. | identifier does not change when a host moves from one network to another in the communication system. |

The Court previously construed this term in the '061 opinion as "a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet deliver." In that case, the Court considered whether a logical address is "unchanging." The parties in the present case raise this issue again. Defendants oppose Plaintiff's proposed inclusion of a clause in the claim construction that the logical address is not unchanging for all time. In its alternative construction, Defendants propose a clause stating that the logical address may not change when a host moves between two networks. Plaintiff argues that Defendants' language would improperly introduce a new limitation to the claim and limit the scope of the claimed invention to a routing method involving mobile hosts. Plaintiff offers a modified version of the construction provided by the Court in its '061 opinion. The Court agrees with Plaintiff with respect to Defendants' proposal, but declines to adopt Plaintiff's proposed construction.

The Court finds no reason to deviate from its previous construction of this term. Defendants' language unnecessarily incorporates mobility. Claim 3 is directed simply at source filtering at a node. In contrast to the '670 patent, claim 3 recites a "sender" and does not make a mobile-stationary distinction. Whether a particular embodiment of the routing method involves static or mobile hosts is irrelevant to the scope of the claimed invention. Restricting claim 3 to mobile hosts would unnecessarily limit the scope of the claim.

Plaintiff's proposed language tracks the Court's construction from the '061 opinion, but includes an additional clause regarding the duration of time that a logical address is fixed. In the '061 opinion, the Court construed the term such that the logical address was "fixed" but described in its rationale that the

address was not unchanging for all time. Given the instruction that the parties not interpret the term contrary to the Court's explained rationale, the Court found it unnecessary to incorporate its reasoning into the text of the construction. Plaintiff has not persuaded the Court an alternate construction is necessary here, particularly in light of an identical instruction. Therefore, the Court construes the term "logical address" as "a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet deliver." The parties may not interpret this term in a manner that is inconsistent with this opinion.

**II. Stored Association**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Stored Association | No construction necessary<br><br>*In the alternative:*<br>a table record that relates a MAC address to a communications port on the node | an index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node |

Defendants argue that the term "stored association" does not have an ordinary meaning either to a lay person or to a person having ordinary skill in the art. Instead, the Court should construe the term to require the use of arithmetic compression for constructing and accessing routing tables. Defendants contend the meaning of the term is limited by the specification because the patent described arithmetic compression as a feature of the invention. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention").

Plaintiff agrees with the rationale behind the Court's earlier determination that construction of the term "association" was unnecessary and argues that construction of the "stored association" is similarly unnecessary. Alternatively, it argues that, in the context of the claim, the term means "a table record that

7

relates a MAC address to a communications port on the node." Plaintiff contends that Defendants' language would improperly limit the claim term to a preferred embodiment. *See Comark Communications*, 156 F.3d at 1187.

In general, courts must impose a "heavy presumption" in favor of the ordinary meaning of claim terms, which can only be overcome by statements of "clear disclaimer" expressly indicating "manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). However, this "heavy presumption" does not arise when the patentee acts as his own lexicographer and gives a claim term a different meaning than the term would otherwise possess. *See Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004). In these situations, the inventor's lexicography governs. *Phillips*, 415 F.3d at 1316.

In this case, the relevant claim language of the '906 patent recites a "stored association" utilized when a packet is either received or forwarded. The term does not appear elsewhere in the '906 patent. Defendants argue that the claim language implicates a routing table, and that the specification describes the use of arithmetic compression to construct and access routing tables. Defendants urge the Court to find this discussion disclaimed embodiments of the invention that do not employ arithmetic compression.

A patent specification may contain an intentional disclaimer of claim scope despite broadly worded claims. *See Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001). The Federal Circuit has found disclaimers where the specification describes features as "critical" or distinguishable over the prior art. *See Verizon*, 503 F.3d at 1308. In contrast, when a patentee addresses several problems present in the prior art, the patentee may direct a claim to a solution for only one of those problems. *See Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003); *Honeywell Inc. v. Victor Company of Japan*, 298 F.3d 1317, 1326-27 (Fed. Cir. 2002).

Defendants attempt to distinguish the present term from the term "associated" as construed by the

Court in the '061 opinion. In the previous opinion, the Court found that the '224 patent[1] disclosed two solutions to problems in the prior art: 1) a fixed, unique, and unchanging logical address and 2) arithmetic compression for quickly accessing information in directory tables. Defendants argue that the Court declined to impose the arithmetic compression limitation because the claim included the logical address limitation. Here, the logical address limitation is absent; thus, Defendants argue that limiting the claim term to stored associations created by arithmetic compression is now proper. The Court disagrees.

Plaintiff identifies several inventive concepts that constitute the solutions disclosed by the claimed inventions. The present term appears in claims directed toward the inventive concept of source address filtering based on a packet's MAC source address. While it is true that the claim is not directed toward the logical address concept, the Court's prior opinion does not compel the conclusion that the claim is directed at the arithmetic compression concept. The source address filtering concept identified by Plaintiff does not involve either the logical address or the arithmetic compression concepts. The Court finds the claim is not directed toward the arithmetic compression concept. Therefore, it is improper to import the arithmetic compression limitation from the preferred embodiment. *See Resonate Inc.*, 338 F.3d at 1367; *Honeywell, Inc.*, 298 F.3d at 1325-26; *see also Comark Communications*, 156 F.3d at 1187. Furthermore, it is clear from the claim language that the disputed term refers to whether a record exists in a table. It is immaterial to the construction of this term how the record was created. Thus, the Court does not find a clear disclaimer of the ordinary meaning of the claim term. *See Liebel-Flarsheim*, 358 F.3d at 913.

Finally, the Court finds that some claim construction is necessary to insure that a jury will understand what is claimed. *See Sultzer Textile A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). The Court construes the term consistent with its plain meaning as understood by a person of

---

[1] In the '061 opinion, the Court focused on the '224 patent, because the '224 patent and '906 patent were children of the '480 Patent and, most, if not all, of the '224 patent citations provided appeared verbatim in the '906 patent.

ordinary skill in the art. *See Phillips*, 415 F.3d at 1312-13. Therefore, the Court construes the term "stored association" as "a table record that relates a MAC address to a communications port on the node."

**III. Agreed Terms**

Prior to the hearing the parties agreed to the following constructions: the term "filtering the data packet" will be construed as "determining which connected nodes are protected from receiving the data packet;" the term "looking up, in a directory table stored at the node, source filtering information associated with the first logical address" does not require construction; the term "source filtering information" and the term "source address filtering information" will be construed as "information used to determine whether to filter a packet based on the packet's source address;" the term "stored protection record" will be construed as "record containing information used to determine whether to filter a packet based on the packet's source address;" the term "MAC address will be construed as "physical address used by the media access controller (MAC) level defined by standards such as Ethernet, token ring, or FDDI;" the term "MAC source address" will be construed as "MAC address (as construed herein) of origin;" and the term "MAC destination address" will be construed as "MAC address (as construed herein) to which something is sent."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim construction interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 4th day of November, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

| Claim term [Patent claims] | Fenner's proposed construction | Defendants' proposed construction | Court's construction |
|---|---|---|---|
| stored association ['906: 9, 10, 19, 20] | No construction necessary.<br><br>*In the alternative:*<br>a table record that relates a MAC address to a communications port on the node. | an index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node. | a table record that relates a MAC address to a communications port on the node. |
| logical address ['224: 3] | a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet delivery; provided that this construction does not imply that a logical address is fixed, unique, and unchanging for all time.<br><br>*In the alternative*:<br>a fixed code assigned within a network to uniquely identify a host independent of its hardware connection. | a fixed, unique, and unchanging identifier assigned within a communications system comprising a plurality of data networks.<br><br>*In the alternative*:<br>a fixed, unique, and unchanging identifier assigned within a communication system comprising a plurality of data networks, whereby the identifier does not change when a host moves from one network to another in the communication system. | a fixed, unique, and unchanging identifier assigned within a network of interconnected computers for source to destination packet deliver |
| filtering the data packet ['224: 3] | **AGREED** | **AGREED** | determining which connected nodes are protected from receiving the data packet |
| looking up, in a directory table stored at the node, source filtering information | **AGREED** | **AGREED** | No construction necessary |

| Term | Col2 | Col3 | Definition |
|---|---|---|---|
| associated with the first logical address ['224: 3] | | | |
| source filtering information ['224: 3] | **AGREED** | **AGREED** | information used to determine whether to filter a packet based on the packet's source address |
| source address filtering information ['906: 10, 20] | **AGREED** | **AGREED** | information used to determine whether to filter a packet based on the packet's source address |
| stored protection record ['906: 10, 20] | **AGREED** | **AGREED** | record containing information used to determine whether to filter a packet based on the packet's source address |
| MAC address ['906: 9, 10, 19, 20] | **AGREED** | **AGREED** | physical address used by the media access controller (MAC) level defined by standards such as Ethernet, token ring, or FDDI |
| MAC source address ['906: 9, 10, 19, 20] | **AGREED** | **AGREED** | MAC address (as construed herein) of origin |
| MAC destination address ['906: 9, 10, 19, 20] | **AGREED** | **AGREED** | MAC address (as construed herein) to which something is sent |