**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.,** | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:08-CV-273-LED-JDL |
| HEWLETT–PACKARD COMPANY and DELL INC., | § § § | Jury Trial Demanded |
| Defendants. | § § | |

**DEFENDANTS' OBJECTIONS TO AND MOTION FOR
RECONSIDERATION BY THE DISTRICT COURT JUDGE OF THE
MAGISTRATE JUDGE'S MEMORANDUM AND OPINION REGARDING
<u>CLAIM CONSTRUCTION</u>**

**TABLE OF CONTENTS**

I. "LOGICAL ADDRESS" ................................................................................................. 1

   A. There Is A Dispute As To The Meaning Of "Logical Address" That The Magistrate Judge Did Not Resolve .................................................................................. 2

      1. The Intrinsic Evidence Establishes That the "Logical Address" Does Not Change if a Host Moves From One Network to Another ....................................................................................................... 4

      2. The Magistrate Judge's Reasoning Was Erroneous ................................................................ 7

   B. The "Logical Address" Is Assigned "Within A Communication System Comprised Of A Plurality Of Data Networks" ................................................................................. 9

II. "STORED ASSOCIATION" ......................................................................................... 11

III. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003) .......................................... 10

*Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322 (Fed. Cir. 2009) ............................. 6

*Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009) ................... 4

*Fenner Investments, Ltd. v. 3Com Corp. et al.*, No. 6:08-cv-61 ............................................ 2

*Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351 (Fed. Cir. 2006) ......................................... 9

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) ............................ 13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ......... 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 10

*SciMed Life Sys, Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) ........... 6

**Statute**

28 U.S.C § 636(b)(1)(A) ..................................................................................................... 1, 4

**Rules**

37 C.F.R. § 1.73 ...................................................................................................................... 13

**Miscellaneous**

MPEP § 1302.01 ..................................................................................................................... 14

MPEP § 608.01(d) .................................................................................................................. 13

Pursuant to 28 U.S.C § 636(b)(1)(A) and Rule 4 of Appendix B to the Local Court Rules, Defendants object to and move this Court to reconsider the Magistrate Judge's November 4, 2009 Memorandum Opinion and Order regarding claim construction. The court should modify the constructions of "logical address" in claim 3 of U.S. Patent No. 5,842,224 (the '224 Patent) (Exhibit A) and "stored association" in the asserted claims of U.S. Patent No. 7,145,906 (the '906 Patent) (Exhibit B) because they are clearly erroneous and contrary to law.

The claim constructions contain three significant errors that require reconsideration and clarification.[1]  First, the Magistrate Judge adopted his construction of "logical address" from an earlier case without resolving a dispute between the parties as to the meaning of "unchanging" in that construction. Second, the Magistrate Judge failed to modify his prior construction of "logical address" to make clear that the context is "within a communication system comprised of a plurality of data networks." Third, the Magistrate Judge erroneously adopted the Plaintiff's proposed construction of "stored association." Defendants respectfully request reconsideration by the court.

I.   **"LOGICAL ADDRESS"**

The asserted claim 3 of the '224 Patent recites a "first logical address for identifying a sender of the data packet independent of the sender's physical address." '224 Patent, Ex. A, col. 34:65-67. The Magistrate Judge construed the term "logical address" as a "fixed, unique and unchanging identifier assigned within a network of interconnected computers for source to destination packet delivery." November 4 Order, Ex. C, at 7. There are two aspects of the construction of the term "logical address" that are clearly erroneous and require reconsideration. First, the Magistrate Judge clearly erred by failing to resolve a scope dispute between the parties regarding the meaning of the word "unchanging." The dispute stems from language in the claim construction opinion and order from the earlier *Fenner Investments, Ltd. v. 3Com Corp. et al.* (No. 6:08-cv-61) (hereinafter "3Com

---

[1] The Magistrate Judge's November 4, 2009 Memorandum Opinion and Order (Docket No. 84) is attached as Exhibit C and will be referred to herein as the "November 4 Order."

Case"), where the Magistrate Judge qualified the meaning of the word "unchanging."[2] As Defendants argued in their brief and at the hearing, the specification and file history of the '224 patent require that the word "unchanging," at a minimum, means that the address does not change if a host moves from one network to another.

Second, the construction of "logical address" requires reconsideration because the "within a network of interconnected computers" portion is clearly erroneous. The intrinsic evidence requires that the "logical address" is an identifier that is assigned "within a communication system comprised of a plurality of data networks." The Magistrate Judge's construction might allow Plaintiff to improperly argue that the address need only be "unique" within a single network of interconnected computers, which is contrary to the clear intrinsic evidence that requires the address be assigned within a communication system comprised of a plurality of data networks. *Id.*

### A. There Is A Dispute As To The Meaning Of "Logical Address" That The Magistrate Judge Did Not Resolve

The parties presented the Magistrate Judge with a crystallized dispute regarding the meaning of the word "unchanging" in the Magistrate Judge's construction of "logical address" in the '224 patent. In the *3Com* Claim-Construction Decision, the Magistrate Judge correctly found that the claimed "logical address" must be "fixed, unique and unchanging" based on the clear language in the specification describing the invention. *3Com* Claim-Construction Decision, Ex. D, at 10 ("a logical address … is 'fixed, unique, and unchanging.' '224 Patent at 2:38-40"). If the Magistrate Judge would have stopped there, there would be no dispute as to the meaning of the word "unchanging."

Unfortunately, in the opinion portion of the *3Com* Claim-Construction Decision, the Magistrate Judge made several statements qualifying "unchanging" in the construction. In particular, the Magistrate Judge went on to state that the words "fixed, unique, and unchanging" do

---

[2] That prior order is the May 26, 2009 Memorandum Opinion and Order Regarding Claim Construction (Docket No. 265), which is attached as Exhibit D. This order will be referred to herein as the "*3Com* Claim-Construction Decision."

2

not "imply that a logical address is fixed, unique, and unchanging for all time." Ex. D at 11.

Thus, while the unqualified "unchanging" in the construction has a clear meaning (*i.e.*, the address does not change under any circumstance), the Magistrate Judge's statement in the opinion that the address is not "unchanging for all time" introduces ambiguity concerning when or if the logical address can or cannot change. Ex. D at 11. The *3Com* Claim Construction Decision offered no further guidance in the opinion regarding when or if the address can or cannot change.

As a result of this ambiguity, Defendants requested a construction that clarified the *3Com* Claim-Construction Decision to make clear that, consistent with the specification, the term "unchanging" in the construction means at least that the address does not change if a host moves from one network to another. Defendants' Responsive Claim Construction Br., Ex. E, at 7–16; Hearing Tr., Ex. F, at 31:1–33:2; 36:17–44:11; Defendants' Markman Presentation, Ex. G, at 6–20. Plaintiff, in an attempt to read the claim on the prior art Internet addresses that were soundly criticized and distinguished in the patent, argued that "unchanging" means only that the address cannot change during the time period when the host computer is engaged in a single session or connection, such that the address can change if the host computer moves from one network to another. Ex. F at 25:24–28:1. In response to this clear dispute, the Magistrate Judge adopted the exact construction from the prior case, stating that the logical address is "unchanging" but "not unchanging for all time," and failed to provide any guidance as to the conditions under which the logical address is or is not "unchanging." Thus, the Magistrate Judge failed to resolve the dispute between the parties regarding whether the "logical address" can change if a host moves from one network to another.

This scope dispute must be resolved by the Court; it cannot go to the jury. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve

it."); *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("questions of the scope of the patent claims [cannot be] left to the jury.") The Magistrate Judge's failure to resolve the dispute was clearly erroneous and contrary to law.[3] A district judge may reconsider a magistrate judge's ruling on a matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* Rule 4 of Appendix B of the Local Court Rules. The Magistrate Judge's failure to resolve the dispute was clearly erroneous and contrary to law.

### 1. The Intrinsic Evidence Establishes That the "Logical Address" Does Not Change if a Host Moves From One Network to Another

Again and again in the specification, Peter Fenner, the sole inventor, criticized the existing Internet address scheme repeated that an essential property of the addresses of the invention is that the addresses do not change if a host moves from one network location to another. The '224 Patent begins by contending that prior art Internet addresses are problematic because they change if a host moves from one network to another:

> One of the problems with the use of Internet is that addresses refer to connections and not to the device itself that is sending the information. Thus, if a communication source, such as an aircraft for example, moves from one communication network to another, its Internet address must change. Specifically, if an aircraft is transmitting a particular location address code in one communication network in the Internet system and it moves to another, its Internet address must change. It is similar to a traveler who has a personal computer operating with a first communication network. If the computer is taken on a trip and connected into the information system after reaching the new destination, a new location address for the computer must be obtained for the new destination.

Ex. A, col. 1:64-2:11. The specification explains that the patent solves this problem by assigning addresses that do not change if a host moves from one network to another:

---

[3] The fact that the Magistrate Judge construed "logical address" does not mean that there is no longer a scope dispute, because the parties dispute the meaning and scope of a term in the construction. *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) (affirming district court's clarification of the meaning of the word "malleable" in the construction for the claim term "graft" after the parties presented a dispute as to the meaning of that word in the construction).

4

> The present system overcomes the disadvantages of the prior art by simply assigning a fixed, unique and unchanging identification code to both host A and host B.  Ex. A, col. 2, ll. 37-46.
>
> Thus the present invention relates to a system for routing a message between a source and a destination . . . said system comprising at least a first signal transceiver device having only a first fixed unique identification code wherever the transceiver device may be located; at least a second signal transceiver device . . . having only a second fixed unique identification code wherever the second transceiver device may be located . . . .  Ex. A, col. 6:20–29.
>
> The present invention modifies the system of FIG. 1 to overcome the disadvantages of the prior art by allowing each host to have a fixed unique identification code instead of an address code which changes to identify itself with whatever communication network it may be operating.  Ex. A, col. 8:34-38.

Finally, during prosecution of the patents, the applicant clearly stated that the addresses of the invention do not change (i.e., are "unchanging") if a host moves from one network to another:

> The invention relates to a system for routing a message from one host or end user in one network, to any other mobile end user or host in another network.  Each end user is assigned a fixed and unique identification code, or address, that does not change as the end user moves from network to network.  U.S. 5,095,480 File History, 6/27/1990 Information Disclosure Statement, Ex. H, at p. 1.
>
> A message in applicant's system is routed in accordance with unique, fixed, and unchanging codes (Claim 1, lines 26-30) that identify the source and the receiver <u>wherever</u> the receiver is located in a system of interconnected networks (Claim, lines 9-11).  It is non-hierarchical.  This means that when a receiver in Applicant's system of interconnected networks moves from communication with a data network in Texas to a data network in Japan, its number, address or identification code (or whatever name you want to call it) remains the same.  U.S. 5,095,480 File History, 11/7/1990 Amendment, Ex. I, at p. 24.

The intrinsic record is clear that the address of the invention is "unchanging."  The Magistrate Judge confirmed this by construing the "logical address" as a "fixed, unique, and unchanging" identifier.  The intrinsic record is also clear that "unchanging," at a minimum, means that the address does not change if a host moves from one network to another because the specification and prosecution history clearly criticizes prior art address that do change if a host moves between networks.  *See Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) ("[w]here the general summary or description of the invention describes a feature of the

5

invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products") (ellipses in original); *SciMed Life Sys, Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (holding that "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question").

The Magistrate Judge's refusal to resolve the dispute regarding the word "unchanging" is perplexing because the very intrinsic evidence that the Magistrate Judge relied upon to add the "fixed, unique, and unchanging" requirement to the construction confirms Defendants' position that the address does not change if a host moves from one network to another. The Magistrate Judge's requirement that the claimed logical address be "fixed, unique, and unchanging" comes directly from the following statement in the specification: "The present invention overcomes the disadvantages of the prior art by simply assigning a fixed, unique, and unchanging identification code to both host A and host B." Ex. A, col. 2:38–40. The prior art the specification was referring to was the prior art Internet addressing scheme, and the "disadvantages of the prior art" referred to in this sentence are described in the two preceding paragraphs in the specification. The main "disadvantage" described in these two paragraphs is the fact that prior art Internet addresses change if a host moves from one network to another:

> Thus, if a communication source, such as an aircraft for example, moves from one communication network to another, its Internet address must change. Specifically, if an aircraft is transmitting a particular location address code in one communication network in the Internet system and it moves to another, its Internet address must change. Ex. A, col. 1:67-2:7.
>
> Thus, two problems occur in such message communication networks. The first is the requirement to change the address code of the communication source when it is at different locations in the network and the second is routing the message to the

6

receiver if the address has changed. Ex. A, col. 2:22–26.

While the Magistrate Judge's construction itself is consistent with the specification, Plaintiff is twisting the Magistrate Judge's additional language in the opinion to contend that the "fixed, unique, and unchanging" logical address can in fact change if a host moves from one network to another:

> THE COURT: Hold one second. Mr. Thoma are you saying the address can change when you move from network to network?
>
> MR. THOMA [attorney for Plaintiff]: Sure. I mean what we're saying is that the node that's claimed in Claim 3, it's irrelevant about this mobility or moving thing…

Ex. F at 55:9-15. Defendants ask this Court to correct the error caused by the Magistrate Judge's opinion and preclude Plaintiff from asserting that the claimed address, which is construed as "fixed, unique and unchanging," can encompass an address that changes if a host moves from one network to another.[4] The plain meaning of the word "unchanging" as well as the manner in which the word "unchanging" is used in the '224 Patent compels that the claimed "logical address" does not change if a host moves from one network to another.

## 2. The Magistrate Judge's Reasoning Was Erroneous

The Magistrate Judge cited two reasons for refusing Defendants' proposed construction. First, the Magistrate Judge erroneously found that Defendants' proposed construction limited the claim to mobile hosts. Ex. C at 6-7. But the '224 Patent and Defendants' proposed construction is agnostic as to whether the host is mobile or not. In other words, the properties of the logical address are the same regardless of whether the host is stationary or mobile. Defendants' proposed

---

[4] Plaintiff's argument that "unchanging" only means that the address has to be unchanging for a connection or session has no support in the specification, and in fact directly contradicts the specification. In particular, the specification teaches, "One of the **problems** with the use of Internet **is that addresses refer to connections** and not to the device itself that is sending the information." Ex. A, col. 1:64–67. Thus, according to the specification, the fact that an Internet address refers only to a single connection or session  and can change when that connection or session is over was a problem with the prior art Internet addressing schemes that the inventor sought to solve with the alleged invention.

7

construction does not "limit the scope of the claim to a routing method involving mobile hosts," as the Magistrate Judge states. *Id.* The claimed method can be equally practiced in a communication system having no mobile hosts as well as in a communication system having mobile hosts. Defendants' proposed construction is directed to the properties of the claimed logical address. One such property is that the address is "unchanging," which means that it does not change *if* a host moves from one network to another. This property applies to logical address regardless of whether the host actually moves. Nothing in Defendants' proposed construction requires such movement.[5] Defendants have defined "logical address" in the only way that the '224 Patent defines it—the logical address is "unchanging," which means the address does not change if a host moves from one network to another.

The Magistrate Judge also erroneously reasoned that "claim 3 is directed simply at source filtering at a node." Ex. C at 6. While "filtering the data packet in response to the source filtering information" is a limitation of the claim, so is "logical address," and the Magistrate Judge's focus on one claim limitation to the detriment of another is in error. It is a basic canon of claim construction that every limitation in a claim is material to defining the scope of a patented invention. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006) (rejecting argument by the patentee that a claim term should not be construed narrowly as required by the specification and the prosecution history because the term is only a "minor" part of the claim). Moreover, the specification admits that source filtering is prior art:

> The MAC level switch 38 shown in FIG. 2 examines the source node address field of the incoming information to determine if any or all of the other connected nodes are protected from receiving the information from the incoming source. This operation is often called "source address filtering." 'Ex. A, col. 13:1-5 (emphasis added).

---

[5] The Magistrate Judge's concern may have been raised by the word "when" in Defendant's proposed alternative construction: "when a host moves from one network to another in the communications system." Defendants, however, used the word "when" in a conditional sense. They did not intend that the word "when" requires mobile hosts. Any misconception can be cured by replacing the word "when" in Defendants' proposed alternative construction with "if."

> With multicast datagrams, the router must determine which outbound links represent the shortest path from the multicast source to the destinations which are members of this particular group. Without this source filtering, well-known in the art, a destination station within a group might receive many copies of the datagram transported over different paths. Ex. A, col. 16:31-37 (emphasis added).

While Claim 3 does recite source filtering at a node, it recites a specific kind of source filtering based on the claimed fixed, unique, and unchanging logical address. Indeed, during prosecution, the applicant argued that what distinguished the claim is filtering on the logical address of the source. The examiner found this argument to be persuasive.[6] Therefore, the examiner allowed claim 3 not because it recited merely source filtering, but because it recited filtering the data packet in response to information associated with a particular kind of source address, the claimed logical address. Thus, the Magistrate Judge's reasoning that "claim 3 is directed simply at source filtering at a node" is in error.

### B. The "Logical Address" Is Assigned "Within A Communication System Comprised Of A Plurality Of Data Networks"

The second erroneous aspect to the Magistrate Judge's construction of "logical address" is that the construction states that the address is assigned "within a network of interconnected computers." Ex. C at 6. The intrinsic evidence is clear that the address is assigned "within a communication system comprised of a plurality of data networks." Defendants briefed and argued at the hearing that the proper context is "within a communications system comprising a plurality of data networks." Ex. E at 16–17; Ex. F at 65:10–22. The Magistrate Judge's November 4 Order construing the claims does not contain a single sentence that addresses this particular issue.

The patent makes clear that the "fixed, unique and unchanging" address must be fixed, unique and unchanging throughout the entire communication system. The context of claim 3 of the

---

[6] "As to claims 46, 51 Applicant also argues that Leone does not teach or suggest filtering data packets **based on a source's logical address**. Applicant argues that Leone teaches filtering based on the physical address, instead (col 1 ln 45 – col 2 ln 60). This argument is persuasive. Accordingly the rejections to the above claims are withdrawn." '224 File History, 6/8/98 Notice of Allowability, Ex. J, p. 2-3 (emphasis added).

9

'224 Patent is a communication system comprised of a plurality of data networks. Claim 3 starts with the words, "In a communication system comprised of a plurality of data networks…" Ex. A, col. 34:58–59. The body of the claim refers back to this "plurality of data networks": "a node connecting a first one of the plurality of data networks to a second one of the plurality of data networks." 'Ex. A, col. 34:61–63; *see ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms") (cited by *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)).

As explained above, the Magistrate Judge explained that the phrase "fixed, unique, and unchanging" comes from the following sentence in the specification: "The present system overcomes the disadvantages of the prior art by simply assigning a fixed, unique, and unchanging identification code to both host A and host B." Ex. D at 11. The very next sentence in the specification further describes this identification code:

> As host B enters into a new network access system, it transmits its identification code to the nearest node and all of the nodes interconnecting all of the disparate networks each store, with the unique identification code of host B, the address of those nodes which can communicate with host B, so that a path can be completed through the nodes between host A and host B.

Ex. A, col. 2:40–46. This sentence matches exactly the context of claim 3, which is one or more nodes that connect networks to establish a communication system comprised of a plurality of networks.

At the claim-construction hearing, Plaintiff raised two arguments against this aspect of Defendants' proposed construction. First Plaintiff argued that Defendants' proposed construction— which replaces "a network of interconnected computers" in the Magistrate Judge's construction with "a communication system comprised of a plurality of data networks"—is redundant in that it repeats language that is already in the claim. Ex. F at 25:14–23. According to Plaintiff, this redundancy

10

would be confusing to the jury. *Id.* Quite the opposite, Defendants' proposed construction matches the context of the claim whereas the Magistrate Judge's proposed construction could be interpreted as singling out one network in the communication system for no principled reason.

The second argument that Plaintiff advanced at the hearing is that the node of the claim need not be used in the Internet.[7] Ex. F at 49:8-21. This argument has no relevance since Defendants construction does not require that the node of the claim be used in the Internet. Defendants construction only requires exactly what the claim states, a node within "a communication system comprised of a plurality of data networks." "Plurality" has a plain meaning of "two or more." Claim 3 recites at least two data networks when it recites "receiving a data packet at a node connecting **at least a first one of the plurality of data networks** to **a second of the plurality of data networks**." Ex. A, col. 34:61–63 (emphasis added). Thus, the claimed 'logical address" must be assigned within a system that has at least two networks.

## II.  "STORED ASSOCIATION"

The asserted claims of the '906 Patent—claims 9, 10, 19, and 20—each recite a "stored association" between a MAC address and a communications port on the node. For example, claim 9, of the '906 Patent recites the limitation:

> if a second MAC address contained in a MAC destination address field of the received packet has a **stored association** with one of the at least three communications ports, causing the packet to be forwarded out the one of the at least three communications ports with which the second MAC is associated if allowed by the source address filtering information associated with the first MAC address….

Ex. B, col. 49:45–52 (emphasis added).[8] Defendants' proposed construction for the claimed "stored association" is "an index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node." Ex. E at 17.

---

[7] The Internet is an example of a communication system comprising a plurality of data networks, but is by no means the only example of a communication system comprising two or more data networks.
[8] A lengthy Certificate of Correction accompanies the '906 Patent. The block quotation above reflects changes made by this Certificate.

Defendants presented substantial evidence that arithmetic compression is described as the "invention" in the specification and is the only technique taught by the '906 Patent specification for associating an address with a communications port on the node in the memory of the node. Ex. E at 18-20; Ex. F at 73:25-74:12; Ex. G at 38-39. Arithmetic compression is not merely a preferred embodiment. *See id.* Thus, the Magistrate clearly erred by adopting Plaintiff's construction, which does not include the requirement of arithmetic compression.[9]

The Summary of the Invention section of the '906 Patent specification characterizes only two concepts as inventive. Ex. B, col. 6:25-7:6. The first aspect is a routing system that uses identification codes that are fixed and unique wherever the transceivers are located (i.e., fixed, unique and unchanging address). Ex. B, col. 6:27–43. This is the logical address in claim 3 of the '224 Patent. The second aspect is a routing table directory "utilizing arithmetic coding to associate a key presented to the memory with a record stored in the memory." Ex. B, col. 6:44–62. The Magistrate Judge recognized that these are the two alleged inventions described by the asserted patents ('224 and '906). Ex. D at 18–19.

Before the Magistrate Judge, Defendants explained that because the only addresses recited in the asserted claims of the '906 Patent are MAC addresses, which both sides agree are not "fixed, unique and unchanging," the claimed "stored association" of the '906 Patent must be an association created through arithmetic compression. Otherwise the '906 claims would not claim either of the two alleged inventions. Ex. E at 17–22.

Defendants also presented clear evidence that the '906 Patent, while touting arithmetic compression as an "invention," disparages prior art techniques, such as hashing, tree structures, and sorted tables, that can be used to construct and access memory records. Ex. B, col. 3:30-4:55. Thus, Defendants' construction is required to prevent Plaintiff from reading the claim to cover techniques

---

[9] The construction adopted by the Magistrate Judge was "a table record that relates a MAC address to a communications port on the node." November 4 Order, Ex. C, at 10.

that the '906 Patent disparaged, and thereby disclaimed. Ex. F at 78:22-79:8, 80:23-81:2; Ex. G at 44-45, 47; *see Edwards Lifesciences LLC,* 582 F.3d at 1332–33; *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319–20 (Fed. Cir. 2006)). For example, the '906 Patent acknowledges that a tree structure is a traditional data structure, but then dismisses it as an option for implementing a networking routing table: "With current realizable computer memory sizes, pure tree structures do not appear to offer a viable structure for real time, address independent directory access method." Ex. B, col. 3:60-4:16.

To rebut Defendants clear evidence that the '906 claims must be limited to arithmetic compression, Plaintiff concocted a series of slides at the Markman Hearing alleging that the specification of the '906 Patent contains no less than nine "inventions." Ex. F, 9:7-11. Plaintiff failed to explain the discrepancy between this argument made with an eye toward prevailing in this litigation and the specification of the '906 Patent. A simple review of the Abstract and Summary of the Invention demonstrates that the applicant considered two concepts inventive: fixed, unique and unchanging addresses and arithmetic compression for constructing memory tables. Ex. B, Abstract, col. 6:25-7:6. The Summary of the Invention section of the patent specification "should be commensurate with the invention **as claimed**." 37 C.F.R. § 1.73 (emphasis added). Similarly, the USPTO's Manual of Patent Examining Procedure ("MPEP") provides that the Summary of the Invention section of the patent specification should be "consistent with the subject matter of the claims." MPEP § 608.01(d), Ex. K. Given these requirements, the public had a right to rely on the representations that the patent applicant made in the Summary of the Invention section of the patent. If the applicant negligently or recklessly failed to conform this section of the specification with the applicant's understanding of the scope of the issued claims, then the patentee, not the public, should bear the consequences of that error. In fact, the patent examiner and the patent applicant are required to work together prior to issuance of the patent to ensure that the Summary of the Invention

13

section is "in harmony with the invention to which the allowed claimed are directed." MPEP § 1302.01, Ex. K. The fact that the patent examiner did not require the applicant to amend the specification evidences that the examiner understood that the claimed "stored association" implicated arithmetic compression.

The Magistrate Judge erroneously concluded that the claims of the '906 Patent are not limited to arithmetic compression because the claims are "directed toward the inventive concept of source address filtering based on a packet's MAC source address." Ex. C at 9. This was clear error. The '906 Patent never describes source address filtering as an inventive concept. To the contrary, the specification admits that source address filtering is prior art. In particular, the specification explains that an operation where a "MAC level switch…examines the source address field…to determine if any or all of the other connected nodes are protected…is **often called 'source address filtering'**." Ex. B, col. 13:54-59 (emphasis added).[10] The specification later states, "Without this source filtering, **well known in the art** . . . ." Ex. B, col. 17:22–23 (emphasis added). Thus, the fact that the '906 claims recite source address filtering is not a valid reason for the Magistrate Judge's decision not to limit the '906 claims to arithmetic compression.

The Magistrate Judge's finding that Plaintiff's proposed construction for "stored association," represented the plain meaning of the term to one of ordinary skill in the art was also clear error. Ex. C at 9–10. The Magistrate Judge's conclusion that the term itself has a plain meaning to one of ordinary skill in the art was refuted by the unrebutted testimony of Defendants' expert that "[i]n this instance, the claims themselves do not provide sufficient context to ascertain the meaning" of "stored association." Declaration of Rich Seifert, Ex. L, ¶ 18.[11]

For the reasons stated above, the Court should set aside the Magistrate Judge's construction

---

[10] This disclosure is particularly relevant because it is made in relation to a MAC-level switch, which inspects and makes decisions based on the MAC addresses inside of a packet. *See* '906 Patent, col. 13, l. 50.

[11] Mr. Seifert's declaration was attached to Defendants Responsive Claim Construction Brief.

14

of the term "stored association" in the asserted claims of the '906 Patent and should adopt Defendants' proposed construction, which is: "an index value, created by arithmetically compressing a MAC address, that points to a record that relates that MAC address to a communications port on the node."

### III. CONCLUSION

For the reasons stated above, the Court should set aside the Magistrate Judge's construction and opinions regarding the terms "logical address" and "stored association" and should adopt Defendants' proposed constructions for these terms.

Dated:  November 23, 2009

Respectfully Submitted,

| | |
|---|---|
| */s/ Mark J. Abate* | */s/ Michael J. Newton* |
| Mark J. Abate | Michael J. Newton |
| New York State Bar No. 2241073 | State Bar No. 24003844 |
| Ankur P. Parekh | Dwayne C. Norton |
| Charles Wizenfeld | (admitted *pro hac vice*) |
| GOODWIN PROCTER LLP | ALSTON & BIRD, LLP |
| The New York Times Building | 2200 Ross Avenue, Suite 3601 |
| 620 Eighth Avenue | Dallas, TX  75201 |
| New York, NY 10018-1405 | Tel.:  (214) 922-3400 |
| Telephone:  (212) 813-8800 | Fax:  (214) 922-3899 |
| Facsimile:  (212) 355-3333 | Email:  mike.newton@alston.com |
| E-mail:  mabate@goodwinprocter.com | Email:  dwayne.norton@alston.com |
| E-mail:  aparekh@goodwinprocter.com | |
| E-mail:  cwizenfeld@goodwinprocter.com | Ronald J. Pabis |
| | WEIL GOTSHAL & MANGES, LLP |
| J. Anthony Downs | 1300 Eye Street NW, Suite 900 |
| Massachusetts State Bar No. 552839 | Washington, DC  20005 |
| Lana S. Shiferman | Tel.:  (202) 682-7000 |
| Massachusetts State Bar No. 645024 | Fax:  (202) 857-0940 |
| GOODWIN PROCTER LLP | Email:  ronald.pabis@weil.com |
| 53 State Street | |
| Boston, MA 02109 | Jared Bobrow |
| Telephone:  (617) 570-1000 | WEIL GOTSHAL & MANGES, LLP |
| Facsimile:  (617) 523-1231 | 201 Redwood Shores Parkway |
| E-mail:  jdowns@goodwinprocter.com | Redwood Shores, CA 94065 |
| E-mail:  lshiferman@goodwinprocter.com | Tel.:  (650) 802-3000 |
| | Fax:  (650) 802-3100 |
| Jennifer Parker Ainsworth | Email:  jared.bobrow@weil.com |
| State Bar Number 00784720 | |
| WILSON, ROBERTSON & CORNELIUS, P.C. | Anish R. Desai |
| One American Center | WEIL GOTSHAL & MANGES, LLP |
| 909 ESE Loop 323, Suite 400 | 767 Fifth Avenue |
| Tyler, TX 75701 | New York, NY 10153 |
| Telephone:  903-509-5000 | Tel.:  (212) 310-8000 |
| Facsimile:  903-509-5091 | Fax:  (212) 310-8007 |
| E-mail:  jainsworth@wilsonlawfirm.com | Email:  anish.desai@weil.com |
| | |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| HEWLETT-PACKARD COMPANY | DELL, INC. |

16

## Certificate of Service

The undersigned hereby certifies that the foregoing document was filed electronically on the 23rd day of November using the Court's Electronic Case Files "ECF" System and has been served on all counsel who have consented to electronic service.

*/s/ Michael J. Newton*