# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:08-CV-273** |
| | § | |
| **HEWLETT-PACKARD CO., et al.** | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Fenner Investments, Ltd.'s ("Plaintiff") motion *in limine* to preclude testimony regarding prior litigation (Doc. No. 207). Defendants Hewlett-Packard Company and Dell, Inc. ("Defendants") have filed a response in opposition (Doc. No. 220). On April 21, 2010, the Court held a pretrial conference and heard argument (Doc. No. 225). Having considered the parties' submissions and argument, the Court **GRANTS-IN-PART** Plaintiff's motion. The Court holds the balance of Plaintiff's motion in abeyance and expects to hear further argument during the post-jury selection hearing regarding the use of prior litigation to impeach Plaintiff's experts.

## PARTIES' POSITIONS

Plaintiff moves to preclude Defendants from introducing testimony or exhibits related to settlement licenses entered into as a result of prior litigations with third parties. PL.'S MOT. at 1. Plaintiff argues the probative value of those settlements is low and clearly outweighed by the potential for jury confusion and prejudice to Plaintiff. *Id.* at 1-3.

Defendants argue those agreements are relevant because they "will provide the jury with evidence of how [Plaintiff] has *actually* valued the very patents-in-suit in negotiations with [Defendants'] competitors." DEFS.' RESP. at 3. (emphasis original). In support of their position,

Defendants rely primarily on a comment in a recent Federal Circuit decision, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), that license agreements arising out of litigation may be the "most reliable" evidence of a reasonable royalty. DEFS.' RESP. at 4 (citing *ResQNet*, 594 F.3d at 872). Defendants appear to contend *ResQNet* has changed the rules for admissibility of settlement agreements, dismissing Plaintiff's reliance on prior cases in this district where settlement agreements were found inadmissible because those cases "were decided . . . prior to the Federal Circuit's *ResQNet.com* decision." *Id.*

## DISCUSSION

"It is a century-old rule that royalties paid to avoid litigation are not a reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F. Supp. 1448, 1452 (C.D. Cal. 1993). As the Supreme Court articulated this principle:

> It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.

*Rude v. Westcott*, 130 U.S. 152, 164 (1889); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978) (observing "[l]icense fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation'" (quoting *Rude*, 130 U.S. at 164)). This district has similarly found "settlements[] and licenses made under the threat of litigation . . . would likely confuse the jury . . . . [and are] inadmissable under

Federal Rule of Evidence 403." *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 801 (E.D. Tex. 2007). "Where a license agreement thus arises under the threat of litigation, it has *little relevance* to the hypothetical reasonable royalty simulation." *Pioneer Corp. v. Samsung SDI Corp.*, No. 2:06-cv-384, slip op. at 9 (E.D. Tex. Oct. 2, 2008) (internal quotation omitted) (emphasis original). "[E]ven if negotiations, offers, and agreements reached under the threat of litigation had some probative value, such value would be too slight and clearly outweighed by the danger of unfair prejudice and confusion." *Id.* at 10.

This district is not alone in "elaborat[ing] on the admissibility of third party license agreements negotiated against a backdrop of litigation." *Cornell Univ. v. Hewlett-Packard Co.*, No. 5:01-cv-1974, slip op. at 4 (N.D.N.Y. May 14, 2008) (J. Rader, sitting by designation) (finding an agreement that "arises under the threat of litigation . . . has little relevance to the hypothetical reasonable royalty situation"). Settlement agreements are generally not relevant "because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147, 159 (D.R.I. 2009); *see also Cornell*, at 8 (agreements made under threat of litigation "do not speak 'to the amount which a prudent licensee . . . would have been willing to pay as a royalty" (quoting *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). Moreover, parties are prejudiced by being forced to litigate the "similarities and differences in the facts regarding the 'same' claims against other defendants to determine what, if any, light the [settlement agreement] sheds on the value of the claim against [this defendant]." *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144-45 (N.D. Iowa 2003).

District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have.[1] *See St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Photo Film Co.*, 674 F. Supp. 2d 555, 559 (D. Del. 2009) (denying motion for new trial based on court's exclusion of settlement agreements pursuant to Rule 403); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 6:08-cv-354, slip op. at 5-6 (E.D. Tex. May 7, 2009) (finding settlement agreement inadmissible); *Uniloc*, 632 F. Supp. 2d at 159 (excluding settlement agreements because "whatever relevance the evidence could have as to [a] reasonable royalty is substantially outweighed by the unfair prejudice to [the defendant] and juror confusion that would likely result"); *Honeywell Int'l, Inc. v. Nikon Corp.*, No. 04-1337, 2009 WL 577274, at *1 (D. Del. Mar. 4, 2009) (excluding licenses under Rule 403); *Gen. Elec. Co. v. DR Sys., Inc.*, No. 06-5581, 2007 WL 1791677, at *2 (E.D.N.Y. June 20, 2007) (noting "settlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty"); *Pioneer*, 219 F.R.D. at 144-45 (alternatively excluding settlement agreement pursuant to Rule 403); *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 181 (S.D.N.Y. 1999) (observing "a license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have negotiated prior to commencement of litigation"); *Donnelly Corp*, 918 F. Supp. at 1134 (finding settlement agreements "more prejudicial than probative" and excluding them under Rule 403); *Wang Labs.*, 860 F. Supp. at 1452 (finding agreements made "in anticipation of litigation cannot be relied upon to prove a reasonable royalty rate").

---

[1]  A settlement agreement may be probative and properly admitted if it was entered into after the threat of litigation had passed. *See Snellman v. Ricoh Co.*, 862 F.2d 283 (Fed. Cir. 1989) (allowing consideration of a license agreement that "would become effective only if the appellate litigation ultimately resulted in [the defendant's] liability"); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1570-72 (Fed. Cir. 1988) (allowing consideration of an agreement entered into after validity and infringement had been determined).  The agreements at issue here are not of this kind.

Contrary to Defendants' assertion, the recent *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation. In *ResQNet*, the litigation-related licenses were part of the record and their admissibility was not before the court. 594 F.3d at 872. Moreover, the court's comment that a litigation license was "the most reliable license" was made in the context of evaluating an expert's reliance on allegedly comparable licenses under the first *Georgia-Pacific* factor. *Id.* at 869-72. That "factor considers only past and present licenses to the *actual patent* and the *actual claims* in litigation." *Id.* at 869 (emphasis added). For analysis of that factor, the court found a litigation license was more reliable than licenses which may have concerned comparable technology, *id.* at 871 n.1 (noting the expert described the licenses as covering products merely "based on the technology described in the patents in suit" (quotation omitted)), but which did not "embody or use the *claimed* technology." *Id.* at 871-72 (emphasis added). Here, Plaintiff's expert is utilizing purportedly comparable licenses based on the twelfth *Georgia-Pacific* factor, *i.e.*, consideration of "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Georgia-Pacific*, 318 F. Supp. at 1120. Finally, the Court notes the litigation licenses in *ResQNet* did not raise the concern of jury confusion because they had been admitted during a bench trial, whereas the parties here will try this case to a jury. *Id.* at 863; *see also Honeywell*, 2009 WL 577274 at *2 (reporting "the Court . . . is unable to identify any cases, either from this District or the Federal Circuit, in which licenses taken under threat of litigation were given significant weight, *particularly in jury cases*" (emphasis added)). Thus, *ResQNet* is distinguishable and does not compel the admission of evidence and testimony relating to settlement agreements in prior litigation.

Turning to the settlement agreements at issue in this case, the Court finds the potential for prejudice and jury confusion substantially outweigh any probative value. *See Rude*, 130 U.S. at 164; *Uniloc*, 632 F. Supp. 2d at 159; *Spreadsheet Automation*, 587 F. Supp. 2d at 801. Parties enter into settlements for a number of reasons "other than the value of the improvements patented." *Rude*, 130 U.S. at 164. These reasons include not only cost of additional litigation or the relative financial positions of the parties, but also the risk of a sizeable verdict against a defendant or a finding of invalidity or uneforceability against a plaintiff, which would end not only that action but future actions against other alleged infringers. Thus, admission of these agreements would "invite a 'mini-trial' on similarities and differences in the facts" between this case and the settled claims. *Pioneer*, 219 F.R.D. at 145. Such a diversion would cause unfair prejudice, confuse the issues, and waste time. *Insight Tech. Inc. v. SureFire LLC*, No. 4-cv-74, 2009 WL 3242554, at *1 (D.N.H. Oct. 8, 2009). Moreover, courts have long held settlement licenses "do not accurately reflect what a willing licensee would pay a willing licensor in an arm's length negotiation," *Donnelly*, 918 F. Supp. at 1134, and have found them to have "little relevance to the hypothetical reasonable royalty situation." *Cornell*, at 7-8. Accordingly, the potential for prejudice and jury confusion substantially outweigh whatever probative value the agreements may have. *See* FED. R. EVID. 403.[2]

---

[2] Plaintiff's motion sought to exclude evidence and testimony "[p]ursuant to Federal Rules of Evidence 402, 403, and 404" and noted this district has excluded licenses "pursuant to Rule 403, among others." PL.'S MOT. at 1-2. Courts have also excluded settlement agreements under Rule 408. *E.g., Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983); *see also, Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1338-41 (N.D. Iowa 1995) (initially finding settlement agreements inadmissible under Rule 408 but allowing them to the extent relied on by the plaintiff's expert witness). In some circuits, Rule 408 is inapplicable to settlement agreements from prior litigations. *See Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1133-34 (W.D. Mich. 1996) (noting "it is obvious that [Rule 408] itself does not preclude evidence of these compromises because the offers to compromise the claims do not concern the claim being litigated in this case" but ultimately excluding the agreements under Rule 403); *see also Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 01 C 5825, 2004 WL 1899927, at *29 (N.D. Ill. Aug. 23, 2004) (finding "[s]ubstantial authority supports [the plaintiff's] contention that Rule 408 only bars evidence of settlement negotiations to prove the validity or amount of the claim under negotiation"); *but see Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) (finding party's "contention that Rule 408 does not apply when third party compromises are involved is not tenable" and holding "Rule 408 does

6

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS-IN-PART** Plaintiff's motion.


**So ORDERED and SIGNED this 28th day of April, 2010.**


JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise"). As the Court finds the agreements properly excluded under Rule 403, it does not consider the applicability, if any, of Rule 408.